# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. W-99-CR-70(1)** |
| | § | **CIVIL NO. 04-CV-163** |
| **CHRISTOPHER ANDRE VIALVA.** | § | |

## MOTION TO ALTER OR AMEND JUDGMENT
## AND BRIEF IN SUPPORT

**TO THE HONORABLE COURT:**

Christopher Andre Vialva, by and through the undersigned counsel, requests this

Court alter or amend the Order[1] and Judgment[2] entered in this case. This Motion is timely

and is presented in accordance with Rule 59(e), Federal Rules of Civil Procedure. Mr.

Vialva respectfully submits his *Motion to Vacate, Alter, or Amend Judgment*[3] stated claims

that supported relief from his convictions and sentences of death. Mr. Vialva substantiated

his claims with affidavits, declarations, and other evidence. This evidence was developed

during the course of post-conviction investigation. Mr. Vialva attempted to gain access to

additional evidence in the possession of the United States through discovery. He sought to

depose the attorney appointed as "learned in the law" concerning matters related directly to

deficiencies in the first stage presentation. The United States did not rebut the evidence

---

[1]Doc. 449.

[2]Doc. 450.

[3]Doc. 372.

presented by Mr. Vialva, but chose to rely on the record presented at trial. The United States resisted all discovery efforts by Mr. Vialva.[4]

Mr. Vialva requested an evidentiary hearing for the purpose of adducing evidence in support of his claims. The Court did not rule on Mr. Vialva's requests for discovery before denying him relief. The Court denied Mr. Vialva relief without an evidentiary hearing. Mr. Vialva will seek reconsideration of both adverse rulings through a separate *Motion to Reconsider.* Through this *Motion to Alter or Amend*, Mr. Vialva requests this Court rescind its Order denying his claims for relief and vacate the Judgment entered on the Order. In support of this request, counsel for Mr. Vialva submits the following argument and authority relating to specific issues ruled on by the Court. Mr. Vialva is not abandoning any issues raised in his *Motion to Vacate*.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) "was adopted to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment." *White v. New Hampshire Dep't. of Employment Sec.*, 455 U.S. 445, 450 (1982) (internal quotation marks omitted). The Rule "is properly invoked to correct manifest errors of law or fact." *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002). A district court has considerable discretion in deciding whether to grant a motion to alter or amend judgment. See *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 174 (5th Cir.

---

[4]Docs. 407, 426.

1990) (overruled on other grounds).  Rule 59(e) is not limited to specific grounds for relief, enumerated in the Rule.  Therefore, when determining the merits of a movant's request, the court must balance the need to bring litigation to an end against "the need to render just decisions on the basis of all the facts."  *Id.*.  The Court's disposition of the following issues merits reconsideration.

### *ROPER V. SIMMONS*[5]

This Court denied this claim on the ground it has been "rejected by the courts."[6]  All of the cases cited predate recent Supreme Court decisions regarding the Eighth Amendment ramifications of extreme punishment imposed for crimes committed by a person who was not an adult.  Specifically in the context of severe punishment imposed on juveniles, the Court recognized the "concept of proportionality is central to the Eighth Amendment."  *Graham v. Florida*, 130 S.Ct. 2011, 2021 (2010).  The Court "view[s] that concept less through a historical prism than according to 'the evolving standards of decency that mark the progress of a maturing society.'"  *Miller v. Alabama*, 132 S.Ct. 2455, 2463, (2012), citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion)).  The decision in *Miller* illustrates how standards of decency evolve on the issue of severe punishment imposed on juveniles and why this issue is far from finally resolved.

---

[5]Doc. 449 at 27; and Motion for Leave to Amend (Doc. 429); Reply (Doc. 431).

[6]Doc. 449 at 27.

The Court consolidated the cases of Evan Miller, who was sentenced to life imprisonment without the possibility of parole for capital murder committed in Alabama, and Kuntrell Jackson, who was convicted of capital murder and aggravated robbery committed in Arkansas.  Both Mr. Miller and Mr. Jackson were fourteen years old at the time they committed the offenses that triggered the respective State's mandatory life sentences. *Miller*, 132 S.Ct. at 2460.  The Court noted the cases "implicate two strands of precedent reflecting our concern with proportionate punishment."  *Id.* at 2463.

> Thus, *Roper* [*v. Simmons,* 543 U.S. 551 (2005)] held that the Eighth Amendment bars capital punishment for children, and *Graham* concluded that the Amendment also prohibits a sentence of life without the possibility of parole for a child who committed a nonhomicide offense.

*Miller*, 132 S.Ct. at 2463.  The decision "rested not only on common sense—on what 'any parent knows'—but on science and social science as well."  *Id.* at 2464.  Indeed, the evidence presented in *Miller* "indicates that the science and social science supporting *Roper*'s and *Graham*'s conclusions have become even stronger."  *Miller*, 132 S.Ct. at n. 5, citing *e.g.*, Brief for American Psychological Association, et al., as *Amici Curiae*, and Brief for J. Lawrence Aber, et al., as *Amici Curiae*.

The studies cited by the *amici* focus on the functionality of the adolescent brain and how a less than fully mature brain fails in several critical areas of impulse control, planning, and risk avoidance.  Because the issue before the Court concerned two defendants who were fourteen at the time of their offenses, the *amici* confined their discussions to research involving adolescents under the age of eighteen.  However, "[s]cience cannot, of course,

draw bright lines precisely demarcating the boundaries between childhood, adolescence, and adulthood; the 'qualities that distinguish juveniles from adults do not disappear when an individual turns 18." *Miller v. Alabama,* Brief of American Psychological Association, American Psychiatric Association, and National Association of Social Workers as *Amici Curiae*, n. 3, quoting *Roper*, 543 U.S. at 574.

Counsel for Mr. Vialva submits these subsequent decisions signal the Supreme Court's evolving Eighth Amendment proportionality analysis. In the context of young offenders, the Court has applied the developing body of research in neuroscience to decide the merits of Eighth Amendment claims. The issue presented by Mr. Vialva is far from precluded. Further consideration of Mr. Vialva's claim is warranted.

### CONFLICT OF INTEREST[7]

This Court concluded the facts did not establish a conflict of interest arose as a result of B. Dwight Goains's continuing efforts to obtain employment with the United States Attorney for the Western District of Texas at the same time he was appointed to represent Christopher Vialva, who was being prosecuted by the United States Attorney for the Western District of Texas.[8] As the Court noted, Mr. Goains expressed his belief "he had an excellent chance of receiving an offer" from the United States Attorney.[9] It is undisputed that Mr.

---

[7]Doc. 449 at 32-35; and Motion to Vacate (Doc. 372), Ground II at 13-41; Reply (Doc. 423) at 14-28.

[8]Doc. 449 at 34.

[9]Doc. 449 at 33.

Goains was hired by the United States Attorney for the Western District of Texas after he was allowed to withdraw as counsel of record.  The United States offered no evidence rebutting either the factual basis for this claim or the expert opinion submitted in support of Mr. Vialva's claim for relief.[10]  The issue is whether the purported "waiver" by Mr. Vialva of his right to conflict free counsel was effective. A hearing is necessary to determine this issue because proper resolution of the claim requires consideration of facts outside the existing trial record.

Mr. Vialva also raised issues concerning the Constitutional sufficiency of Mr. Goains's representation.[11]  Disposition of this claim requires an evidentiary hearing during which Mr. Goains's professional performance and judgment will be evaluated against objective standards.

> [A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial. The evidence introduced at trial, however, will be devoted to issues of guilt or innocence, and the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis. . . . [E]vidence of alleged conflicts of interest might be found only in attorney-client correspondence or other documents that, in the typical criminal trial, are not introduced. . . . Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

---

[10]Doc. 373, Exhibit II-A.

[11]Doc. 372, Ground IV at 60-91.

*Massaro v. United States*, 538 U.S. 500, 505 (2003) (internal citation omitted). Counsel recognizes subsequent events will impact the forum in which such a hearing should be conducted.

On November 10, 2007, during the pendency of this Motion, Mr. Goains was appointed United States Magistrate Judge for the Western District of Texas. See Attachment 1, Administrative Office of the United States Courts, *The Third Branch*, "Judicial Milestones" (Dec. 2007). By statute, the Judges of the Western District of Texas were involved in the appointment process. See 28 U.S.C. § 631. This Court was serving as Chief Judge when Magistrate Judge Goains was appointed to his initial eight year term. See Attachment 2, Judges Biographical List, http://www.tdwd.uscourts.gov. The appointment of Magistrate Judge Goains to the bench of the Western District of Texas created a separate conflict. Mr. Vialva is entitled to have the evidentiary hearings on his claims for relief conducted by a judicial officer who is not directly associated with the appointment, retention, and professional conduct of the subject of the hearing.

### INEFFECTIVE ASSISTANCE OF COUNSEL[12]

Mr. Vialva raised specific challenges to the Constitutional sufficiency of the representation rendered by counsel at the first and second stages of trial. These challenges included counsel's failure to subject the government's case to appropriate adversarial testing and failure to develop readily available evidence in mitigation of punishment. In denying

---

[12]Doc. 449 at 44; Motion to Vacate (Doc. 372), Ground IV at 60-91; Ground VI at 106-112; Ground VII at 113-144; Reply (Doc. 423) at 40-47; 51-53; 54-63.

these claims, the Court stated in its conclusion the evidence against Mr. Vialva was "overwhelming" and so no prejudice can be demonstrated as a result of any deficiencies in counsel's performance. However, as recent decisions in capital post conviction cases demonstrate, overwhelming evidence of guilt does not preclude a finding of *Strickland*[13] prejudice on a claim of ineffective assistance of counsel in the penalty phase proceedings, no matter how horrific the facts of the offense were.

> For example, in the case against Angela Johnson:

> . . . this case revolve[d] around five murders.  In July of 1993, Johnson's boyfriend, Dustin Honken, with Johnson's help, abducted and killed Greg Nicholson, Lori Duncan (Nicholson's girlfriend), and Duncan's two young daughters, Amber and Kandi. Nicholson, who had sold drugs for Honken, was the central witness in a drug case against Honken.  The Duncans had the misfortune of being present when Honken and Johnson arrived at their home to deal with Nicholson.  Months later, Honken, again with Johnson's assistance, murdered a second potential witness against Honken, Johnson's former boyfriend, Terry DeGeus.

*United States v. Johnson,* 495 F.3d 951, 957 (8th Cir. 2007), *cert. denied* 129 S.Ct. 32 (2008).  On post conviction review, the District Court vacated the sentences of death on four grounds: failure to confront an aggravating factor with available evidence rebutting the government's theory of motive; failure to provide an expert with data critical to his analysis, rendering his expert testimony virtually irrelevant; failure to investigate and present evidence regarding Ms. Johnson's mental state at the time of the offenses; and multiple failures associated with the retention of a critical expert.  *Angela Johnson v. United States,* N.D.

---

[13]*Strickland v. Washington*, 466 U.S. 668 (1984).

Iowa, Central Division, Case No. C 09-3064-MWB (No. CR 01-3046-MWB), Doc. 377 at

436, 439-440 (March 22, 2012).  With full recognition of the consequences of granting relief,

the trial court held:

> The relief I am granting here *is not about the case that the jurors heard*, or the
> appropriateness of their verdict based on that evidence (which I affirmed on
> post-trial motions in a 297-page ruling), *but about the case that the jurors did
> not but should have heard*, but for trial counsel's woefully unconstitutional
> performance.

*Id.* at 447 (emphasis in original).

The District Court became aware of "the case that the jurors did not but should have

heard" over the course of several evidentiary hearings on Ms. Johnson's motion to vacate.

Ultimately, the overwhelming evidence of Ms. Johnson's participation in five murders, two

of which involved child victims, was not legally sufficient to preclude a finding of *Strickland*

prejudice.  The District Court's legal determination could not be made without consideration

of the extra-record facts adduced at an evidentiary hearing.

The disposition of Darryl Johnson's post conviction motion by the United States

District Court for the Northern District of Illinois, Eastern Division, is also instructive.

Affirming the convictions and sentences of death, the Seventh Circuit noted Mr. Johnson was

"a high-ranking official of the Gangster Disciples, a large Chicago street gang," who was

convicted of ordering the murders of two gang members he suspected would inform on him.

*United States v. Johnson*, 223 F.3d 665, 667 (7th Cir. 2000).  The United States focused its

closing arguments in the penalty phase on Mr. Johnson's "future dangerousness" and the

likelihood that his affiliation with a violent street gang would mean he could not be controlled in prison. *Id.* at 671-676.

On post conviction review, the District Court concluded Mr. Johnson received Constitutionally deficient representation during the penalty phase based on counsel's failure to address effectively the government's primary aggravating factor. *United States v. Johnson*, N.D. Ill., E. Div., Case No. 02 C 6998, Doc. 112 (12/13/2010). Overwhelming evidence of Mr. Johnson's leadership of a notorious criminal organization and of his responsibility for two homicides did not preclude a finding of *Strickland* prejudice based on trial counsel's failure to adequately challenge evidence of future dangerousness. Mr. Vialva raised precisely the same issue.

Counsel for Mr. Vialva recognizes federal review of death sentences imposed by State courts pursuant Title 28, United States Code, Section 2254 presents distinct procedural issues. The federal court's disposition of *Strickland* claims is nonetheless instructive.

> [O]ur decades of experience with scores of § 2254 habeas cases from the death row of Texas teach an obvious lesson that is frequently overlooked: Almost without exception, the cases we see in which conviction of a capital crime has produced a death sentence arise from extremely egregious, heinous, and shocking facts. But, if that were all that is required to offset prejudicial legal error and convert it to harmless error, habeas relief . . . would virtually never be available, so testing for it would amount to a hollow judicial act.

*Walbey v. Quarterman*, No. 08-70007, 2009 WL 113778 at **8 (5th Cir. Jan. 19, 2009) (quoting *Gardner v. Johnson*, 247 F.3d 551, 563 (5th Cir. 2001). The Supreme Court certainly does not consider review of *Strickland* claims "a hollow judicial act." To the contrary, the Court has enforced the relief afforded by *Strickland* when the record

demonstrates trial counsel's failure to properly prepare and present a second stage defense. See *Porter v. McCollum*, 558 U.S. 30, 130 S.Ct. 447, 453-454 (2009) (per curiam) (investigation into the life of the "fatalistic and uncooperative" defendant was Constitutionally deficient; wealth of information presented during post conviction evidentiary hearing established both deficit performance and prejudice); *Sears v. Upton*, __ U.S. __, 130 S.Ct. 3259, 3266 (2010) (per curiam) ("We certainly have never held that counsel's effort to present *some* mitigation evidence should foreclose an inquiry into whether a facially deficient mitigation investigation might have prejudiced the defendant.").

Counsel for Mr. Vialva submits these cases demonstrate this Court erred in denying the ineffective assistance claims simply based on the trial record's "overwhelming" evidence of guilt.  Federal capital cases with equally, or more, egregious facts than those established in this case have been remanded for evidentiary hearings after a district court failed to afford the movant an opportunity to present his extra-record facts in support of his claims.  See, *e.g.*, *Sinisterra v. United States*, 600 F.3d 900 (8th Cir. 2009) (remanding capital § 2255 for a hearing on ineffective assistance claim; case involved homicide and attempted homicide by member of violent Colombian drug cartel); *Nelson v. United States*, 297 Fed. Appx. 563 (8th Cir. 2008) (remanding capital § 2255 for a hearing on ineffective assistance claim; case involved kidnap and murder of a ten year old girl).  By confining review solely to the record presented at trial, and by essentially asserting that the facts of this case make it legally impossible for Mr. Vialva to make a showing of *Strickland* prejudice, this Court committed error and improperly denied Mr. Vialva's *Motion to Vacate* on a legally insufficient record.

11

**CONCLUSION**

Based on the foregoing, Mr. Vialva requests this Court vacate the Order denying him

relief and the Judgment entered in conformity with the Order.

Respectfully submitted,

*/Susan M. Otto*

SUSAN M. OTTO
Oklahoma Bar # 6818
Federal Public Defender Western District of Oklahoma
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930 Telefacsimile: 405 609-5932
COUNSEL FOR DEFENDANT/MOVANT
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701
counsel for Plaintiff/Respondent United States of America

Rob Owen
P.O. Box 40428
Austin, Texas 78704
counsel for Brandon Bernard

/Susan M. Otto
SUSAN M. OTTO