**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| v. | § | CRIMINAL NO. W-99-CR-70(1) |
| | § | CIVIL NO. 04-CV-163 |
| CHRISTOPHER ANDRE VIALVA. | § | |

**MOTION TO RECONSIDER DENIAL OF MOTION FOR DISCOVERY
AND OF MOTION FOR EVIDENTIARY HEARING
AND BRIEF IN SUPPORT**

**TO THE HONORABLE COURT:**

Christopher Andre Vialva, by and through the undersigned counsel, requests reconsideration of the Court's decision[1] denying his motions for discovery[2] and his motion for evidentiary hearing[3]. Counsel for Mr. Vialva is submitting a separate motion to alter or amend the judgment pursuant Rule 59(e), Federal Rules of Civil Procedure. Doc. 454.

Mr. Vialva presented eleven claims for relief. The claims included ineffective assistance of counsel in the first and second stages of his capital trial[4], the United States's failure to disclose material evidence as required by *Brady v. Maryland*[5], and a denial of his

---

[1] Doc. 449 at 63.

[2] *Motion to Conduct Discovery*, Doc. 404 (09/20/2004); *Supplement to Motion for Discovery,* Doc. 410 (11/12/2004); and *Combined Motion to Grant Motion, Second Motion for Discovery*, Doc. 425 (02/08/2005).

[3] *Motion to Vacate, Set Aside or Correct Sentence*, Doc. 372 at 174 (06/14/2004).

[4] Doc. 372, Ground IV at 60-92; Ground VII at 113-144.

[5] Doc. 372, Ground III at 41-59.

Sixth Amendment right to effective assistance of counsel based on his counsel's conflict of interest[6]. Further, Mr. Vialva asserted the federal death penalty was imposed disproportionately against people of color.[7] Mr. Vialva's requests for discovery were directed specifically to evidence bearing on the merits of these claims. The United States opposed all of Mr. Vialva's discovery efforts.[8]

In denying Mr. Vialva relief, the Court held the factual record was deficient in various respects. Without conceding the Court's determination regarding the sufficiency of the factual record, counsel submits Mr. Vialva should be afforded the opportunity to develop additional relevant evidence through the discovery he requested.

**LEGAL STANDARD**

The statute governing the disposition of Mr. Vialva's post conviction motion provides the court "shall . . . grant a prompt hearing" "unless the motion and the files and the records of the case *conclusively* show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 at para. 2 (unnumbered) (emphasis added). "Conclusive negation" is a high bar. See *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980) (documents suggestive, but not conclusive, of government witness's state-court convictions sufficient to trigger evidentiary hearing on *Brady/Giglio* claim). Mr. Vialva's *Motion to Vacate* raised issues recognized as requiring extra-record factual development and an evidentiary hearing as predicates to disposition.

---

[6]Doc. 372, Ground II at 13-41.

[7]Doc. 372, Ground X at 159-160.

[8]Docs. 407, 426.

Failure to grant Mr. Vialva the opportunity to develop additional facts through discovery and to present the extra-record evidence at a hearing was error.

The legislative history of Section 2255 reflects Congress's intention that the standard for obtaining an evidentiary hearing is liberal. Prior to the passage of the Anti-Terrorism and Effective Death Penalty Act [hereinafter, AEDPA], the standard governing the granting of evidentiary hearings in federal court for both Section 2254, which is applicable to review of state sentences, and Section 2255 proceedings was established by the Supreme Court:

> Where the facts are in dispute, the federal court in habeas corpus *must* hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the trial or in a collateral proceeding.

*Townsend v. Sain*, 372 U.S. 293, 312 (1963) (emphasis added). The Court identified six circumstances under which a federal court must grant an evidentiary hearing:

> If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

*Id.* at 313. Of course, these factors are not relevant to a Section 2255 proceeding since there is no prior state hearing in a case attacking a federal conviction. Even before the AEDPA, significant differences distinguished Section 2255 from Section 2254 proceedings regarding the showing necessary to obtain an evidentiary hearing in federal court, due to concerns of comity and deference to fact finding by state courts. The AEDPA effected significant

3

revisions to both Section 2255 and Section 2254, including the standards for obtaining an evidentiary hearing.

With respect to Section 2254 proceedings, Congress modified the *Townsend* standard and severely limited a federal district court's discretion to grant an evidentiary hearing. See 28 U.S.C. 2254(e). But, Congress placed no such similar limitations on the standard for granting an evidentiary hearing in Section 2255 proceedings. See *Stead v. United States*, 67 F. Supp. 2d 1064, 1074 n.5 (D.S.D. 1999) ("Although the AEDPA modified, to some extent, the *Townsend* standard for obtaining evidentiary hearings in 28 U.S.C. § 2254 cases, Congress made no parallel changes in § 2255 practice and evidently chose to leave intact the *Townsend* standard and to create a discrepancy between the right to a hearing in § 2254 and § 2255 cases."). Mr. Vialva's request for an evidentiary hearing is governed by the more liberal, pre-AEDPA, standard articulated in *Townsend.*

The Fifth Circuit articulated a two-part test for determining whether a movant is entitled to a hearing:

> (1) Does the record in the case, as supplemented by the Trial Judge's "personal knowledge or recollection" conclusively negate the factual predicates asserted in support of the motion for post-conviction relief?
>
> (2) Would the petitioner be entitled to post-conviction relief as a legal matter if those factual allegations which are not conclusively refuted by the record and matters within the Trial Judge's personal knowledge or recollection are in fact true?
>
> If the answer to the first inquiry is a negative one and the answer to the second inquiry an affirmative one, then § 2255 requires the District Court to conduct an evidentiary hearing on those factual allegations which, if found to be true, would entitle the petitioner to post-conviction relief.

4

*Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979). Although record analysis may sometimes satisfy the court's investigative duties, evidentiary hearings are typically necessary when ineffective assistance of counsel is alleged in a Motion to Vacate because such claims almost always involve activities that are not a part of the extant trial record:

> [w]here . . . the petitioner supports his claims of inadequate preparation, attorney indifference, failure to call witnesses, etc., with plausible factual allegations and evidence sufficient to raise a substantial doubt that his attorney's in-court performance was not as effective as it might seem to third-party observers, the court is obligated to delve behind the scenes and ascertain whether the attorney, either by inaction or through ill-taken action, failed to meet the standards of a reasonably competent and devoted advocate, to the ultimate prejudice of the petitioner.

*Id.* at 1016; accord, *United States v. Rivas–Lopez*, 678 F.3d 353, 359 (5th Cir. 2012) (hearing required to determine facts concerning ineffective assistance of counsel claim in non-capital § 2255 proceedings); and see *Allen v. United States*, No. 4:07CV00027 ERW, 2011 WL 1770929 (E.D.Mo., May 10, 2011) (unpublished) (hearing required on issues presented in § 2255 motion filed in federal capital prosecution). These decisions are consistent with the analysis and reasoning of the Supreme Court. See *Massaro v. United States*, 538 U.S. 500, 504-506 (2003) (recognizing § 2255 as the appropriate mechanism for extra-record factual development of ineffective assistance of counsel claims).

The standard for obtaining discovery, which is distinct from the standard for obtaining an evidentiary hearing, is equally or more liberal. In *Bracy v. Gramley*, 520 U.S. 899 (1997), the Court unanimously reversed the lower courts' denial of discovery. The Court reached this conclusion even though it found Mr. Bracy's argument that discovery would support his

theory for relief was "speculative" and "only a theory at this point." *Id.*, 520 U.S. at 905, 908. The Fifth Circuit has also recognized a petitioner does not have to prove his claim in order to establish good cause for discovery under Rule 6 of the *Rules Governing Habeas Cases*. A petitioner must merely allege claims which *may* be proven through court ordered discovery:

> [W]here specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is… entitled to relief, it is the duty of the courts to provide the necessary facilities and procedure for an adequate inquiry.

*Murphy v. Johnson*, 205 F.3d 809, 813-14 (5th Cir. 2000) (internal citation and punctuation omitted). Mr. Vialva's requests for discovery were specific regarding the information sought and the necessity of process, and were tied directly to claims enumerated in his *Motion to Vacate*.

**ARGUMENT AND AUTHORITY**

**I.    The Denial of Mr. Vialva's Motions for Discovery and an Evidentiary Hearing Was Error as a Matter of Law.**

The Court's decision denying Mr. Vialva's *Motion to Vacate* on the merits conflated both the standard of pleading and the process applicable to Section 2255 proceedings.

> The law is clear that, in order to be entitled to an evidentiary hearing, a petitioner need only *allege* – not prove – reasonably specific, nonconclusory facts that, if true, would entitle him to relief. If the allegations are not *affirmatively contradicted* by the record and the claims are not patently frivolous, the district court is *required* to hold an evidentiary hearing. *It is in such a hearing that the petitioner must offer proof.*

6

*Aron v. United States*, 291 F.3d 708, 715 n.6 (11th Cir. 2002) (emphasis in original and emphasis added). Mr. Vialva was not required to prove his claims in his pleading. He was required to plead sufficient facts that, if true, would entitle him to relief. He alleged facts that were not affirmatively contradicted and claims that were not patently frivolous. By so doing, Mr. Vialva established his right to a hearing. Mr. Vialva's efforts to develop additional extra-record facts prompted him to invoke the discovery procedures provided by Title 28, United States Code, Rule 6, following Section 2255. Mr. Vialva requested an evidentiary hearing so he would have a fair opportunity to submit all of the evidence acquired during this process to support his claims.

In the Order denying relief, the Court repeatedly faulted counsel for failing to adduce sufficient facts from the extant record to support the claims for relief.[9] In the same order, the Court denied Mr. Vialva's motions for discovery and his request for an evidentiary hearing, effectively precluding him from adducing sufficient proof to support his claims. Virtually all of Mr. Vialva's claims rely on extra-record factual development. Mr. Vialva recognized this and sought to develop the factual record through the appropriate process. By relying on the incomplete trial record to deny Mr. Vialva's claims and, at the same time, denying him the opportunity to develop a sufficient record, the Court effectively obviated Section 2255 as a means of post conviction review.

---

[9]Doc. 449 at 34; 43-44; 45; 47-48; and 59.

The Court's decision is not simply a *non sequtur*; it is reversible error. See *Sinisterra v. United States*, 600 F.3d 900, 907-909 (8th Cir. 2009) (inadequate record related to trial attorneys' performance; factual development includes the right to conduct an inquiry of the attorneys; "Without a complete record, we cannot determine whether [Movant] was prejudiced by counsels' alleged failure to investigate and present mitigation evidence. Thus, we conclude that the case must be remanded for an evidentiary hearing."); also *Nelson v. United States*, No. 07–3071, 2008 WL 4697018 at *1 (8th Cir. Oct. 27, 2008) (recognizing issues regarding the ineffectiveness of counsel "often require a hearing to consider evidence not disclosed on the face of the trial record; " case reversed and remanded, based on finding "a fair and just determination of some of [the claims] required an evidentiary hearing to be held."). The Court's decision is also contrary to prevailing practice. In nearly every recent federal capital post conviction proceeding, an evidentiary hearing has been conducted to permit the movant to develop facts and offer evidence in support of his or her extra-record claims. *E.g.*, *Arboleda Ortiz v. United States,* No. 04-8001-CV-W-GAF (W.D. Mo.); *United States v. Chad Fulks*, Cr. No. 4:02-992-JFA (4:08-cv-700072-JFA)(D. S.C.); *Norris Holder v. United States*, No. 4:03-CV-0923-ERW (E.D. Mo.); *United States v. Alfred Bourgeois*, No. Cr-C-02-216 (2:07-cv-00223) (S.D. Tex.); *Dustin Honken v. United States*, No. 10-CV-3074-LRR (N.D. Iowa); *William Lecroy v. United States*, 2:08-CV-00083-RWS (N.D. Ga.); *David Jackson v. United States*, NO. 1:09-CV-01039-RC (E.D. Tex); *Billie Allen v. United States*, No. 4:07-CV-27-ERW (E.D. Mo.); *United States v. Gary Sampson*, R. No. 01-CR-10384-MLW (1:09-CV-10762-MLW) (D. Mass.); *United States v. Brandon Basham*, No.

4:02-CR-992-JFA (4:11-CV-70079-JFA) (D. S.C.); *Angela Johnson v. United States*, No. 3:09-CV-03064-MWB (N.D. Iowa).

> **II. Reconsideration of the Order Denying Discovery and an Evidentiary Hearing is Warranted. Granting Mr. Vialva a Fair Opportunity to Develop and Present Extra-Record Facts in Support of His Claims is Necessary.**

Mr. Vialva presented specific grounds for relief in his *Motion to Vacate*. Mr. Vialva supported his claims with specific factual allegations and proffered two appendices containing extra-record documents, declarations, and exhibits corroborating his claims. Mr. Vialva requested discovery and an evidentiary hearing specifically for the purpose of adducing additional extra-record facts to support his claims. The following proffer illustrates the type of evidence to which Mr. Vialva's discovery efforts would be directed, with the intention of producing the evidence at a hearing.

For example, in denying Mr. Vialva relief on the issue of ineffective assistance of counsel in the penalty phase, the Court noted "the evidence of the Defendants' guilt was overwhelming."[10] The Court specifically held Mr. Vialva "had a history of violence, from which the jury was entitled to find that he would constitute a continuing danger."[11] The United States relied on the non-statutory aggravating factor, "future dangerousness," in support of its argument for death. Since Mr. Vialva's trial, this alleged aggravating factor and the evidence associated with it has been discredited further.

---

[10]Doc. 449 at 44.

[11]*Id.* at 59.

9

The United States presented the testimony of Dr. Richard Coons in rebuttal to the testimony of defense witness, Dr. Mark Cunningham. XV Tr. 3154-3164. Since this trial, the Texas Court of Appeals has held that Dr. Coons's methodology failed to meet the *Daubert* test of scientific reliability and that admission of the testimony on the issue of "future dangerousness" was error. See *Coble v. State of Texas*, 330 S.W.3d 253, 279-280 (Tex. Crim. App. 2010). The Texas appellate court's conclusion that Dr. Coons's methods were scientifically flawed is supported by empirical data reflecting the history of federal prisoners convicted of capital crimes and sentenced to life imprisonment without the possibility of release.

The first study was completed in 2007. See Mark D. Cunningham, Thomas J. Reidy, and Jon R. Sorensen, *Assertions of "Future Dangerousness" at Federal Capital Sentencing: Rates and Correlates of Subsequent Prison Misconduct and Violence*, 32 Law and Hum. Behav. 46 (2008) [hereinafter, *2007 Study*]. The source of the information reviewed by the authors was the United States Bureau of Prisons. The study focused on 145 capital murderers who were confined in the Bureau of Prisons for life between 1991 and 2005. The study documented and compared the rates of violent and potentially violent disciplinary infractions, recorded as fourteen separate categories, for the target inmates and others housed in the maximum security facilities of the Bureau of Prisons. *Id.*, Table 2 and text at 55-56. The rates of violence were similar: "None of the comparisons between the capital LWOP [life without possibility of release] and U.S. Penitentiary inmate groups are statistically significant." *Id*. at 56; and see Table 2 at 55 and text at 60. The rates of violence were

10

extremely low: 0.7% for assaults with moderate injuries and no fatalities or assaults with major injuries. *Id.*, Table 3 and text at 55-57, 60.

Using fourteen years of data recorded by Bureau of Prisons for inmates convicted of capital murder and sentenced to life imprisonment, the authors compared the rates of violence for the capital murder inmates against whom the government had formally alleged "future dangerousness" as an aggravating factor and those without such an allegation. There were no statistically significant differences between the two groups. *2007 Study*, Table 3 and text at 57. The defendants identified by the United States as posing a risk of "future dangerousness" were, in fact, no more likely to commit acts of violence in prison. *2007 Study* at 61; see Table 3 and text at 55-56, 57. Perhaps the most significant statistic reflected in the Bureau of Prisons's records is the fact that 28% of the inmates the United States identified at trial as posing a risk of future dangerousness had no disciplinary infractions of any sort. *Id.*, Table 3 and text at 61. Based on this empirical data, the authors concluded:

> . . . scientific data demonstrate that only a minority of capital offenders perpetrate serious violence in prison, and that it is *not* possible to reliably identify at trial which of these defendants are more likely than not to commit these acts. . . . Quite the contrary, in the face of base rate data, it is only assessments of varying *improbability* of prison violence among these offenders that are reliable.

*2007 Study* at 61 (emphasis in original). Mr. Vialva's conduct in prison is consistent with the authors' findings.[12]

---

[12]Doc. 374 at Exhibit VII-N.

Ground VII of Mr. Vialva's *Motion to Vacate* addressed trial counsel's abject failure to marshal a coherent second stage defense. A critical component of trial counsel's failure resulted from his fear that Mr. Vialva "would likely be diagnosed as having Antisocial Personality Disorder." [13] From that point, trial counsel embarked on a series of errors that culminated in a wholly ineffective second stage presentation. When Mr. Vialva's complete life history is considered, it is highly unlikely a qualified mental health professional would conclude he suffers from antisocial personality disorder.

Mr. Vialva's family history and personal history support a diagnosis of Bipolar Disorder. The diagnosis of this clinical disorder would have effectively ruled out a determination of Antisocial Personality Disorder. See American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* [hereinafter, DSM] IV-TR (2000) at 688. The DSM-IV-TR represents the consensus of the American Psychiatric Association regarding the classification of mental and emotional disorders. These standards provide a personality disorder should be diagnosed "only when the defining characteristics ... do not occur exclusively during an episode of an Axis I disorder." *Id.*. Axis I disorders must be considered and ruled out before an expert diagnoses a personality disorder. The clinician must conclude "[t]he enduring pattern [of behavior] is not better accounted for as a manifestation or consequence of another mental disorder." DSM-IV-TR at 688. Further, the "enduring pattern" of behavior must not occur solely as a result of substance abuse or a

---

[13] Doc. 374 at Exhibit VII-O, ¶ 4.

medical condition, such as neurological disease or head trauma. When the personality changes occur as a result of extreme stress, posttraumatic stress should be considered. *Id.* at 688-89. Based on these standards, it is evident that an independent, complete, and timely investigation into Mr. Vialva's life was crucial.

As the results of the post conviction efforts attest, an appropriate second stage investigation would have yielded critically relevant information. Based on a complete life history, a qualified mental health professional would not have diagnosed Mr. Vialva with Antisocial Personality Disorder. Trial counsel's decisions were not based on accurate information, sound expert advice, or an appropriate understanding of the issues. Additional facts supporting this claim and related errors in the first and second stage defense presentation would be developed through the requested discovery and presented in a subsequent evidentiary hearing.

CONCLUSION - REQUEST FOR RELIEF

This Court denied Christopher Vialva relief without affording him a full and fair opportunity to litigate the issues presented in his *Motion to Vacate*. In the years since Mr. Vialva's convictions and sentences of death, both the law and science have continued to illuminate the merits of his claims. The developments in both serve only to undermine further confidence in the outcome of these proceedings. Based on the foregoing, counsel submits this matter should be heard by a Court in which the Honorable B. Dwight Goains is not sitting as a United States Magistrate Judge. The Order and Judgment should be vacated and this matter transferred for further proceedings.

Respectfully submitted,

*/Susan M. Otto*
SUSAN M. OTTO
Oklahoma Bar # 6818
Federal Public Defender Western District of Oklahoma
215 Dean A. McGee   Suite 109
Oklahoma City, Oklahoma 73102
Telephone: 405 609-5930 Telefacsimile: 405 609-5932
COUNSEL FOR DEFENDANT/MOVANT
CHRISTOPHER ANDRE VIALVA

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Mark Frazier
Assistant United States Attorney
800 Franklin, Suite 280
Waco, Texas 76701
counsel for Plaintiff/Respondent United States of America

Rob Owen
P.O. Box 40428
Austin, Texas 78704
counsel for Brandon Bernard

                                          */Susan M. Otto*
                                          SUSAN M. OTTO